**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENTE T. OBICO,<br><br>Plaintiff,<br><br>v.<br><br>MISSION CREEK SENIOR COMMUNITY/MERCY HOUSING, et al.,<br><br>Defendants.<br>_____/ | No. C 11-03932 JSW<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT MOTION TO REOPEN DISCOVERY**<br><br>**(Docket Nos. 47, 60)** |

**INTRODUCTION**

Now before the Court for consideration are the motion for summary judgment, filed by Defendant Mercy Housing, Inc. ("Mercy"), and the motion to re-open discovery filed by Plaintiff, Vincente Obico ("Mr. Obico"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it finds the motions suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for March 1, 2013, GRANTS Mercy's motion for summary judgment, and DENIES AS MOOT Obico's motion to re-open discovery.

**BACKGROUND**[1]

This is an employment discrimination case, in which Mr. Obico contends that Mercy discriminated against him on the basis of his national origin, in violation of the Civil Rights Act of 1964, 42 U.S.C. section 2005e-5 (the "Title VII Claim"), and on the basis of his age, in violation of California's Fair Housing and Employment Act, California Government Code

---

[1]   Unless otherwise noted, the facts are undisputed.

section 12940, *et seq.* (the "FEHA Claim") and the Age Discrimination in Employment Act, 29 U.S.C. section 621, *et seq.* (the "ADEA Claim"). Mr. Obico also brings a claim for wrongful termination under FEHA and for wrongful termination in violation of public policy.

Mercy employed Mr. Obico, who is Filipino, as a desk clerk at the Mission Creek Senior Community ("Mission Creek") from April 13, 2006 through March 6, 2009. (Declaration of Chris Shott ("Shott Decl."), ¶ 3; Declaration of Jose Vega ("Vega Decl."), ¶ 5; Declaration of Vincente Obico ("Obico Decl."), ¶ 3.) At the time Mercy hired him, Obico was 64 years old, and he was 67 when Mercy terminated him. (Obico Decl., ¶ 3; Shott Decl., ¶ 4.)

Before Mercy hired him, Mr. Obico worked as a security guard for a different company, which was providing security services to Mercy during Mission Creek's construction. Jose Vega ("Mr. Vega"), Mission Creek's Senior Property Manager, met Mr. Obico at that time and encouraged Mr. Obico to apply for the desk clerk position. (Declaration of Mark Jacuzzi ("Jacuzzi Decl."), Ex. A (Deposition of Vincente Obico ("Obico Depo.") at 42:10-13, 60:11-61:10); Declaration of Kendall Burton ("Burton Decl."), Ex. C (Deposition of Jose Vega ("Vega Depo.") at 54:19-55:16); Vega Decl., ¶¶ 7-10.) Mr. Vega knew Mr. Obico was Filipino and assumed, based on his appearance, that he was over 40. (Vega Decl., ¶¶ 8-10.)

Mr. Vega supervised Mr. Obico and gave him positive performance evaluations, although he did have some discussions with Mr. Obico about job performance. (Vega Decl., ¶ 16; Vega Depo. at 68:11-71:2 and Depo. Exs. 9-11; Declaration of Hani Ganji ("Ganji Decl."), ¶¶ 6-8, Ex. B (Deposition of Jacquie Hoffman ("Hoffman Depo.") at 92:4-5, 96:3-4, 99:14-16); Gangji. Decl. Exs. D-F.)

On or about February 26, 2009, Mr. Vega received a report from one of Mission Creek's residents, Shawn Jaffari, regarding an incident that occurred on February 6, 2009, between Mr. Obico and Mr. Jaffari's son-in-law Avi Heatley. (*See, e.g.,* Vega. Decl., ¶ 18; Vega Depo. at 74:12-19, 74:23-75:1.) Mr. Jaffari reported that Mr. Heatley left his jacket in the lobby, went back to retrieve it, and noticed that an envelope containing travel funds was missing. Mr. Jaffari also reported that Mr. Heatley asked Mr. Obico about the envelope, that Mr. Obico

2

denied any knowledge of the envelope, and that Mr. Heatley had to retrieve the envelope himself. (Vega Decl., ¶ 18.)

Following his conversation with Mr. Jaffari, Mr. Vega prepared an incident report and continued to investigate the incident, with the assistance of Mark Mascarenhas, Mission Creek's Assistant Property Manager. (Vega Decl., ¶ 18, Ex. 2 ("Incident Report"); Vega Depo. at 85:8-87:14, 88:12-89:1; Declaration of Mark Mascarenhas ("Mascarenhas Decl."), ¶ 3.) As part of their investigation, they reviewed a videotape of the interaction between Mr. Heatley and Mr. Obico. Mr. Vega and Mr. Mascarenhas also discussed the incident with Mr. Obico, asked him about what happened, and reviewed the videotape with Mr. Obico. (Vega Decl., ¶¶ 20-23; Vega Depo. at 89:25-90:5, 94:10-24, 105:8-24, 106:6-107:9; Mascarenas Decl., ¶¶ 3-8; Obico Depo. at 114:10-25, 115:19-24, 129:7-19; Obico Decl., ¶ 6.).)

Mr. Vega advised Jacquie Hoffman, Mercy's property supervisor at the time, about the incident. (Vega Decl., ¶ 21; Vega Depo. at 88:11-89:1; Declaration of Kendall Burton ("Burton Decl."), Ex. B (Deposition of Jacquie Hoffman ("Hoffman Depo.") at 13:4-14:18, 14:25-15:10, 18:15-19:23, 130:21-25, 146:13-148:11).) Ms. Hoffman reported the incident to her superiors, requested permission to immediately suspend Mr. Obico while Mr. Vega investigated the incident and was granted permission to do so. (*See, e.g.,* Burton Decl., Ex. B (Hoffman Depo. at 131:23-25, 141:3-142:15, 143:144:12, 151:22-152:1, and Depo. Exs. 12, 14); Declaration of Aric Alvarez ("Alvarez Decl."), ¶¶ 5-7, Exs. 1-2; Declaration of Chris Shott ("Shott Decl."), ¶¶ 9-12.)

According to Mr. Obico, he found a jacket in the lobby, took it to his desk, and examined its contents to see if he could determine the owner. The jacket contained a passport and an envelope. (Obico Decl., ¶ 5.) Mr. Obico determined that the jacket belonged to Mr. Heatley, telephoned Mr. Jaffari, and Mr. Heatley came to the lobby to retrieve his belongings. Mr. Obico maintains that he did not open the envelope and returned it with the jacket. (*Id.*, ¶¶ 5-7.)

On or about March 4, 2009, Mr. Heatley's wife sent Mr. Vega an email which sets forth Mr. Heatley's recollection of the events. (Vega Decl., ¶ 25, Ex. 5.) Mr. Heatley states that

when he retrieved the jacket the envelope was not inside and that he went back to the desk, asked Mr. Obico if he had seen it, "looked behind the counter to investigate for myself and then he lifted a book where the envelope was beneath." (*Id.*, Ex. 5.)

Mercy suspended Mr. Obico while the investigation continued and terminated him on March 6, 2009. (Vega Decl., ¶¶ 24, 26-27, Exs. 3, 5; Burton Decl., Ex. B (Hoffman Depo. at 198:1-200:7, 201:21-203:19 and Depo. Ex. 18); Alvarez Decl., ¶ 7, Exs. 3-4; Shott Decl., ¶ 12.) Mercy hired Rodney Lewis, who is African-American and younger than Mr. Obico, as Mr. Obico's replacement. (*See, e.g.,* Vega Decl., ¶ 31.)

The Court shall address specific, additional facts, as necessary in the remainder of this Order.

## ANALYSIS

**B.    Legal Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an

4

essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     The Court Denies Mr. Obico's Request to Deny or Defer Ruling on the Motion.**

Although Mr. Obico contends that he presented sufficient evidence to overcome Mercy's motion, he has asked the Court to deny the motion or to defer ruling on the motion to permit him to take additional discovery. (Opp. Br. at 19:6-20:14; Declaration of Patrick R. Delahunty.) Pursuant to Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Mr. Obico requests the opportunity to depose Christopher Shott, Mercy's Vice President of Human Resources, on the issue of whether Mercy disciplined other employees more harshly than Mr. Obico. Mr. Obico does not, however, identify any particular employees that may be comparable to Mr. Obico, about whom Mr. Shott could testify. The Court concludes that Mr.

5

Obico has not met his burden to show that Mr. Shott's testimony is likely to reveal facts that would preclude summary judgment.

Mr. Obico also requests the opportunity to depose Mark Mascarenhas, who participated in the investigation that led to the decision to terminate Mr. Obico. For the reasons discussed below in Section D.2, the Court concludes that Mr. Obico has not shown that Mr. Mascarenhas' testimony would likely lead to controverting evidence.

Therefore, the Court DENIES the Rule 56(d) request.

**C.    Evidentiary Objections.**

Mr. Obico also objects to much of the evidence Mercy submitted in support of its motion for summary judgment, including certain portions of declarations submitted by Mr. Shott and Aric Alvarez ("Alvarez Decl."), who was Mercy's Human Resources Manager at the time Mercy terminated Mr. Obico. (*See* Opp. Br. at 20:15-25:5; Reply Br. at 13:14-15:17 (responses to objections).)  First, Mr. Obico objects to all references and summaries of the videotape of the incident, pursuant to Federal Rule of Evidence 1002. It is undisputed that Mercy has either lost or destroyed the videotape. As discussed below, the critical issue is not whether Mercy was correct about what happened on February 6, 2009. Rather, the issue is whether its reason for terminating Mr. Obico was a pretext for discrimination. Therefore, the Court overrules this objection and shall not disregard any reference to Mercy's version of the contents of the videotape. It shall, however, consider the fact that the videotape has been lost or destroyed and any potential adverse inferences to be drawn from that fact in determining whether Mr. Obico has met his burden to overcome Mercy's motion.

Mr. Obico objects to the Incident Report, which is attached as Exhibit 2 to the Vega, Alvarez, and Shott Declarations, and testimony about the incident and the Incident Report proffered by Mr. Alvarez, Ms. Hoffman, Ms. Vega and Mr. Mascarenas, on the basis that the witnesses either lack personal knowledge of the incident or that the statements are inadmissible hearsay. (*See* Opp. Br. at 20:18-22:26.)  The Court overrules these objections on the basis that Mercy does not offer this evidence to show the truth of the matter asserted. Rather, Mercy

6

1  offers the Incident Report and the testimony about the incident as evidence of its employees'
2  state of mind and why they took the actions they did.

3  Mr. Obico objects to paragraph 7 and 8 of Mr. Mascarenhas' declaration on the basis
4  that it is improper lay opinion testimony. (*Id.* at 24:24-28.) The Court overrules that objection.

5  Mr. Obico objects to testimony offered by Mr. Vega and Mr. Shott regarding Mercy's
6  lost and found policies. Because the Court did not rely on that testimony to resolve this motion,
7  the Court overrules those objections as moot.

8  Mr. Obico objects to paragraph 3 of the Alvarez Declaration and paragraphs 7 and 12 of
9  the Shott declaration, which relate to their understanding of Mercy's disciplinary policy. Mr.
10 Obico objects to these paragraphs on the basis that Mr. Alvarez and Mr. Shott lack personal
11 knowledge about the disciplinary policy. That objection is overruled, because both declarants
12 explain how and why they are familiar with Mercy's disciplinary policy. (Alvarez Decl. ¶ 3;
13 Shott Decl. ¶ 6.) Mr. Obico also argues that the testimony is irrelevant, because it contradicts
14 the actual disciplinary policy. The Court overrules that objection.

15 Mr. Obico objects to certain portions of his deposition, which Mercy has offered, on the
16 basis that "[t]he testimony does not support the propositions for which it is cited." (Opp. Br. at
17 25:5.) The Court overrules this objection, because it can evaluate whether the citations do or do
18 not support Mercy's contentions.

19 The Court overrules as moot Mr. Obico's remaining objections, because the Court did
20 not rely on the challenged testimony and evidence to resolve the motion.

21 **C.    Mercy Is Entitled to Summary Judgment on Each of Mr. Obico's Claims.**
22     **1.    The Parties' Burdens.**

23 The Court analyzes Mr. Obico's Title VII Claim, the FEHA Claim, and the ADEA
24 Claim under the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*,
25 411 U.S. 792, 802 (1973). *See Ritter v. Hughes Aircraft, Inc.*, 58 F.3d 454, 456-57 (9th Cir.
26 1995) (analyzing ADEA claim under Title VII framework)*; Guz v. Bechtel Nat'l Inc.*, 24 Cal.
27 4th 317, 355 (2000). "Under that framework, the burden of production first falls on the plaintiff
28 to make out a prima facie case of discrimination." *Coghlan v. American Seafoods Company,*

7

*LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005); *see also Guz*, 24 Cal. 4th at 354-55.  If the plaintiff makes a prima facie case of discrimination, "'[t]he burden of production then shifts to the employer, who must present evidence sufficient to permit the factfinder to conclude that the employer had a legitimate, nondiscriminatory reason for the adverse employment action." *Id.*; *see also Noyes v. Kelly Services,* 488 F.3d 1163, 1169 (9th Cir. 2007); *Guz*, 24 Cal. 4th at 354.  If an employer meets its burden, "the plaintiff bears the full burden of persuading the factfinder that the employer intentionally discriminated against him." *Coghlan*, 413 F.3d at 1094; *Guz*, 24 Cal. 4th at 354.

    **2.    The Title IV Claim.**

Mr. Obico can make a prima facie case of national origin discrimination by showing that he: (1) belongs to a protected class; (2) was qualified for his position; (3) was terminated; and (4) the job went to someone outside the protected class.  *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993); *Coghlan*, 413 F.3d at 1094; *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1122 (9th Cir. 2004).  Mercy has assumed, for purposes of summary judgment, that Mr. Obico can make his prima facie case.  It is undisputed that Mr. Obico is Filipino and, thus, belongs to a protected class, was terminated, and was replaced by Mr. Lewis who is African-American.  Although Mr. Vega had some discussions with Mr. Obico about his performance, there is sufficient evidence in the record to support a conclusion that, up until the time of the February 6, 2009 incident, Mr. Obico performed satisfactorily.  As such, the record establishes that he could make his prima facie case of national origin discrimination.

Mercy contends that it terminated Mr. Obico because it suspected him of attempting to steal the envelope containing Mr. Heatley's money and for being dishonest during the investigation.  Mr. Obico contends that Mercy has not met its burden, because it has not presented admissible evidence in support of its reasons for terminating Mr. Obico.  However, Mercy has put forth evidence that it terminated Mr. Obico, because its employees *believed* he had attempted to steal Mr. Heatley's property and had not been truthful during the investigation.  (*See, e.g.,* Vega Decl., ¶¶ 18-24, 26; Shott Decl., ¶¶ 9-12; Alvarez Decl., ¶¶ 5-7.)  That evidence

8

is admissible and, if "believed by the trier of fact, would support a finding that" the decision to terminate Mr. Obico "was not the result of unlawful discrimination." *Noyes*, 488 F.3d at 1169.

Thus, the burden shifts back to Mr. Obico to show that Mercy's articulated reason is a pretext for unlawful discrimination. Mr. Obico can meet this burden by "'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Mr. Obico's evidence must be both specific and substantial to overcome the reasons set forth by Mercy. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002). The Ninth Circuit has noted, however, that this standard is "'tempered' by [its] observation that a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one.'" *Earl v. Nielson*, 658 F.3d 1108, 1117 (9th Cir. 2011) (quoting *Noyes*, 488 F.3d at 1170).

Although Mr. Obico testified that he believed he was terminated because he was Filipino, he could not recall anyone at Mercy or Mission Creek, including Mr. Vega, making any derogatory comments about Filipinos. (Obico Depo. at 136:12-138:10.) Indeed, Mr. Obico does not purport to rely on direct evidence of discrimination. Rather, he argues that indirect evidence shows that Mercy's proffered explanation is a pretext for discrimination.

First, Mr. Obico states that he never looked in the envelope, denies that he attempted to steal it, and notes that Mr. Heatley stated that it was "curious (or poorly planned out) that [Mr. Obico] should even alert me that my jacket was left downstairs if he had intended to keep any contents." (Obico Decl., ¶¶ 5, 7; Vega Decl., Ex. 4.) The fact that the videotape is missing could give rise to an adverse inference instruction at trial, *i.e.* that it would not corroborate the version of events attested to by Mr. Vega and Mr. Mascarenhas. Further, although Mr. Obico strongly denies Mercy's version of events, that is not the proper focus. "[I]t is not important whether [Mercy's reasons] were *objectively* false.... Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even

9

baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (emphasis in original, internal quotations and citation omitted).

Mr. Obico argues that Mercy violated its own disciplinary policies.[2] "A plaintiff may also raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to [his] disadvantage." *Earl*, 658 F.3d at 1117. Mercy's disciplinary policy provides that "[w]hen employees do not meet expected standards or have violated policies or procedures *and counseling is not considered the appropriate course*, disciplinary action should be taken, initiated by the supervisor." (Ganji Decl., Ex. B (Hoffman Depo., at 32:19-33:6); Ganji Decl., Ex. P at MH 000222 (emphasis added).) Mercy's disciplinary policies also provide that "[v]erbal counseling or warning *usually* precedes disciplinary action ... *except in situations deemed serious enough to warrant immediate disciplinary action*." (Ganji Decl., Ex. P at MH 000222 (emphasis added).) Similarly, the policies state that "the specific steps outlined *may not always be followed* if the supervisor, in consultation with his/her supervisor and the Human Resources Division, determines that a different process is warranted." (*Id.* (emphasis added).)

During her deposition and in response to a request for a hypothetical about these policies, Ms. Hoffman testified that killing someone or hurting a tenant would be examples of behavior that would require immediate disciplinary action. (Ganji Decl., Ex. B (Hoffman Depo. at 35:23-37:3).) However, she also testified about an incident where a maintenance worker had been accused of stealing from a tenant and was suspended. (Burton Decl., Ex. B (Hoffman Depo. at 38:4-24).)

Mr. Obico also argues that Mercy treated other employees more favorably by counseling them, rather than immediately suspending them. Mr. Obico "may raise a triable issue of pretext through comparative evidence that the employer treated" non-Filipino "but otherwise similarly situated employees more favorably than he was." *Earl*, 658 F.3d at 1113. "Other employees are similarly situated to the plaintiff when they 'have similar jobs and display similar conduct.'"

---

[2] Mr. Obico does not suggest or present evidence that Mr. Vega or Ms. Hoffman acted without authority from their supervisors.

10

1  *Id.* at 1114 (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)).
2  Although the employees need not be identical in all respects, they "must be similar in material
3  respects." *Id.*  In the *Earl* case, the plaintiff presented evidence that she had been fired after a
4  single disciplinary infraction, whereas younger employees, who had similar positions to the
5  plaintiffs, were required to follow the same policies, and who committed similar infractions
6  were treated more favorably.  The court concluded that this evidence, in combination with
7  evidence that the employer had deviated from its normal disciplinary policy, was sufficient
8  evidence of pretext to overcome defendant's motion for summary judgment.  *Id.* at 1113-18.

9  Here, Mr. Obico points to evidence that Mr. Mascarenhas was counseled before he was
10 terminated.  Mr. Vega was an Assistant Property Manager at Mission Creek, and, thus, it is not
11 clear, that he and Mr. Obico are similar in "material respects."  *Earl*, 658 F.3d at 1114.
12 Assuming *arguendo* that their positions were sufficiently similar and that they were required to
13 follow the same policies, Mr. Vega testified that Mr. Mascarenhas was counseled for four to
14 five months before he was terminated because he came in late, did not show up to work, and
15 failed to deposit rent checks in a timely fashion.  Mr. Vega also testified that Mercy did not
16 view the failure to deposit rent checks as attempted theft.  (*See* Vega Depo. at 134:4-138:15.)

17 Mr. Obico also points to evidence that an employee named Maria S., an Assistant
18 Property Manager, was counseled for over three months before she was terminated.  According
19 to the record, the violations cited by Mercy included losing keys and giving a key to her
20 boyfriend, both of which were viewed to pose a security risk to the property at which she
21 worked, which is the same reason Ms. Hoffman relied upon to recommend immediate
22 suspension.  (*Compare* Ganji Decl., Ex. K *with* Alvarez Decl., Ex. 1.)  There is no evidence in
23 the record about Maria S.'s national origin or age.  Taking the facts in the light most favorable
24 to Mr. Obico, the Court will assume she is younger than him and is not Filipino, and that their
25 positions were sufficiently similar to make her an appropriate comparator.   However, there also
26 is evidence that when Mercy terminated Maria S. it had recently discovered that could not
27 reconcile "over $10,000 in missing checks."  (Ganji Decl., Ex. K.)

11

It is undisputed that three of the four people involved in the decision to terminate Mr. Obico did not know his national origin or his age. (Alvarez Decl., ¶ 8; Shott Decl., ¶ 13; Burton Decl., Ex. B (Hoffman Depo. at 58:12-16).) Although Mr. Vega was aware of Mr. Obico's age and national origin, he also was the person who encouraged Mr. Obico to apply for a position at Mercy. Mr. Obico does not submit any evidence to suggest that Mercy has offered varied or conflicting reasons for its decision to terminate him. *Compare Earl*, 658 F.3d at 1113.

When the Court views the facts in the light most favorable to Mr. Obico, the Court concludes that Mr. Obico has not presented specific and substantial evidence of pretext and finds that there is insufficient evidence from which a reasonable juror could conclude that Mercy terminated Mr. Obico because he was Filipino.

Accordingly, the Court GRANTS Mercy's motion for summary judgment on the Title VII claim.

### 3. The FEHA Claim.

Mr. Obico also claims Mercy discriminated against him because of his age in violation of FEHA. In order to establish a prima facie case of age discrimination, Mr. Obico must establish that he: (1) was 40 years old or older; (2) was subject to an adverse employment action; (3) was performing his job satisfactorily at the time of the adverse employment action; and (4) was replaced by a significantly younger person. *See Hersant v. California Department of Social Services*, 57 Cal. App. 4th 997, 1002 (1997). Mercy has assumed for purposes of summary judgment that Mr. Obico could establish a prima facie case. It is undisputed that Mr. Obico was over 40 at the time Mercy terminated him and was replaced by someone younger. Although Mr. Vega had some discussions with Mr. Obico about his performance, there is sufficient evidence in the record to support a conclusion that, up until the time of the February 6, 2009 incident, Mr. Obico performed satisfactorily. As such, the record establishes that he could make his prima facie case.

For the reasons discussed above, in connection with the Title VII claim, Mercy has met its burden to show it had a reason for terminating Mr. Obico for reasons other than his age. Thus, the burden thus shifts back to Mr. Obico to show that Mercy terminated him because of

his age. *Hersant*, 57 Cal. App. 4th at 1003. Once again, in order to meet this burden, Mr. Obico

> must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination. It is not enough for the employee simply to raise triable issues of fact concerning whether the employer's reasons for taking the adverse action were sound.

*Id.* at 1004-05.

Although Mr. Obico testified that he believed he was terminated because of his age, he could not recall anyone at Mercy or Mission Creek, including Mr. Vega, commenting on his age or treating him differently because of his age. (Obico Depo. at 133:8-12, 133:19-25, 134:6-23, 135:1-136:10.) Mr. Obico again relies on indirect evidence of discrimination, and he relies on the same evidence used to support his Title VII claim. For the reasons set forth above, even when the Court views the facts in the light most favorable to Mr. Obico, the Court concludes that Mr. Obico has not presented specific and substantial evidence of pretext and finds that there is insufficient evidence from which a reasonable juror could conclude that Mercy terminated Mr. Obico because of his age.

Accordingly, the Court GRANTS Mercy's motion for summary judgment on the FEHA claim.

**4.     The ADEA Claim.**

The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to prevail on his ADEA claim, Mr. Obico must be able to establish, either by direct or circumstantial evidence, that "age was the 'but-for' cause of" Mercy's decision to terminate him. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 178 (2009). For the reasons set forth above, even when the Court views the facts in the light most favorable to Mr. Obico, the Court concludes that there is insufficient evidence from which a reasonable juror could conclude that Mercy terminated Mr. Obico because of his age.

13

Accordingly, the Court GRANTS Mercy's motion for summary judgment on the ADEA claim.

### 5. The Wrongful Termination Claims.

FEHA provides that it is an "unlawful employment practice ... [f]or an employer, because of the race ... [or] ... age, of any person, to ... discharge the person from employment." Cal. Gov. Code § 12940(a). This claim is premised on the same allegations and evidence that support Mr. Obico's discrimination claims under FEHA and Title VII. For the reasons set forth above, even when the Court views the facts in the light most favorable to Mr. Obico, the Court concludes that Mr. Obico there is insufficient evidence from which a reasonable juror could conclude that Mercy terminated Mr. Obico because of his age or his national origin.

"An employer may not discharge an at will employee for a reason that violates fundamental public policy." *Stevenson v. Superior Court*, 16 Cal. 4th 880, 887 (1997). This claim is based on Mercy's purported violations of the policies embodied in FEHA. (FAC ¶¶ 44-49.) Because Mr. Obico has failed to show a violation of FEHA, he has failed to show that Mercy terminated him in violation of public policy.

Accordingly, the Court GRANTS Mercy's motion for summary judgment on the wrongful termination claims.

## CONCLUSION

For the foregoing reasons, the Court DENIES Mr. Obico's Rule 56(d) request, GRANTS Mercy's motion for summary judgment, and DENIES AS MOOT Mr. Obico's motion to re-open discovery. The Court shall issue a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: February 15, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

14